## S. D. MEACHAM *vs.* THE TOWN OF NEWPORT.

January Term, 1898.          ,

Present: Ross, C. J., Taft, Tyler, Munson, Start and Thompson, JJ.

*V. S. 387, 391, 392, 394, 5422—Quadrennial List Must be Sworn to before Justice—Return of Quadrennial List—Failure to Return Quadrennial not Cured by Filing Copy—Grand List Invalidated by Illegal Quadrennial—Assumpsit—Costs.*

V. S. 391, requiring the quadrennial list to be sworn to before a justice, is not satisfied by an oath taken before a notary.

V. S. 5422 authorizing notaries to "administer oaths in all cases where an oath is required, unless a different provision is expressly made by law," does not confer authority to administer the oath required to be taken to the quadrennial list, because as to that oath "a different provision is expressly made" by V. S. 391.          '

A quadrennial list sworn to before a notary public only is in legal effect unverified by oath and is invalid.

A quadrennial list required by V. S. 387 to be returned to the town clerk's office by the first Tuesday of July, but not returned until the last day of August, is invalid.

Failure to return the quadrennial list within the time required by V. S. 387 is not cured by the seasonable filing of the copy thereof for the use of succeeding listers as required by V. S. 394, especially when, as in this case, the copy must have shown that the oath was a nullity.

The seasonable return of the quadrennial list to the town clerk's office is essential to secure the tax payer's right of appeal to the board of civil authority, for V. S. 392 provides that such an appeal shall be taken "within three days after the day the list is required by law to be returned."

If the quadrennial list is invalid because unverified by oath, so also is a grand list which is made, so far as the real estate is concerned, merely by transferring the appraisal from the quadrennial list, although as to the personal estate the list may be regular.

Whether in such case the listers might make a new appraisal of the real estate is not considered.

The grand list being thus invalid, the taxes assessed thereon are, under the decisions of this court, invalid *in toto*, and not merely in the proportion which the illegal part of the list bears to the legal.

But the plaintiff cannot recover in assumpsit the amount paid as a town school district tax. for such district constituted only a fraction of the town, and the tax had been paid over to the district before this action.

Both parties having excepted and neither having prevailed, neither is entitled to costs in this court.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury at the September Term, 1897, Orleans County, *Rowell,* J., presiding. Verdict ordered and judgment thereon rendered for the plaintiff. Both parties excepted.

The plaintiff sought to recover money which he paid the collector of the defendant for taxes assessed on the list of 1895. It appeared that the listers of the defendant made a quadrennial appraisal of real estate in 1894, in which certain real estate belonging to the plaintiff was appraised, and made an annual grand list in 1895, in which the plaintiff was assessed for personal property of the value of $20,980.00, a poll $2.00 and real estate $1,000.00 making his total list $221.80; that said town voted and assessed upon the plaintiff's said list a town tax of $117.60, a state tax of $26.62, a five-per-cent. state school tax of $11.09, a five-per-cent. state highway tax of $11.09, making state taxes of $48.88, and the town school district assessed a tax of $36.27.

It also appeared that the defendant was in 1895 and ever since has been divided into three school districts, as follows: Newport Academy and Graded School District with a grand list of $10,065.38, the Newport Center Graded School District with a grand list of $2,142.08, and the remainder of said town, known as the Town School District, with a grand list of $3,112.73. It also appeared that all of said state taxes had been paid by the town treasurer to the state treasurer and said town school district tax to the treasurer of said town school district before the commencement of this suit.

The court ordered a verdict for the plaintiff for the town tax of $117.60 and interest. The plaintiff claimed to recover a larger sum, and it was agreed that if there was no error except as to the amount of the verdict the supreme

court might increase the amount by the addition of either tax which ought to have been included. To the exclusion of the state and town district taxes from the verdict the plaintiff excepted.

*O. S. Annis* for the plaintiff.

*John Young* for the defendant.

Ross, C. J.    (1)    This is an action of general assumpsit to recover money which the plaintiff paid the collector of the defendant for taxes assessed on the list of 1895. His right depends upon whether his grand list as made up for that year was valid or invalid. He was taxed for both real and personal property and his poll. No irregularity in making up his list that year, so far as relates to his poll and personal property, is claimed. It is contended that the quadrennial appraisal of his real estate, made in 1894, which was carried into, and became a part of, his grand list of 1895, was invalid, and that this rendered his grand list wholly invalid, and all taxes assessed thereon.

The quadrennial list of 1894 is claimed to be invalid for two reasons: (1) That it was not sworn to before an officer authorized to administer the oath to the listers, and (2) that it was not completed and returned, seasonably, to the town clerk's office. It was sworn to before a notary public. V. S. 5422 authorizes notaries public and other officers named, to "administer oaths in all cases where an oath is required unless a different provision is expressly made by law." V. S. 391 requires the quadrennial list to be signed by a majority of the listers "and verified by oath before a justice." This is followed by the form of the oath to be administered. Clearly this is a provision expressly made by law in regard to the officer who shall administer the oath. Hence a notary public was unauthorized to administer it, and the oath taken by the listers before him was of no binding force. Hence, too, the quadrennial list for 1894 is not verified by a valid oath of the listers, and

has not the attestation required to its impartiality and accuracy. For this reason that list must be held invalid. *Walker* v. *Burlington*, 56 Vt. 131; *Houghton* v. *Hall*, 47 Vt. 333. Again by V. S. 387 the completed list was required to be returned to the town clerk's office on or before the first Tuesday of July of that year. It was not so returned before August 31st, 1894. The defendant contends that this irregularity was cured by the seasonable return of the copy, as required by V. S. 394, for the use of the listers for subsequent years. If this was a true copy, it had only the certificate of a notary public to the administration of the oath, which was unauthorized and invalid. The copy could be no better than the original in this respect. But the filing in the town clerk's office, seasonably, is essential to secure the rights of the taxpayers. They, by V. S. 392, if dissatisfied with the appraisal, can appeal therefrom to the board of civil authority only "within three days after the day the list is required by law to be returned to the town clerk's office." The right of appeal is important. The plaintiff was wholly deprived of this right. There was nothing then in the town clerk's office from which he could appeal, or from which he could ascertain whether he desired to exercise this right. In both of the particulars complained of, the irregularities invaded the rights of the plaintiff. The quadrennial list was invalid. The taxes assessed against and collected from the plaintiff thereon were illegally assessed and collected. The defendant contends that this does not render the grand list for 1895 invalid, nor the taxes assessed thereon. He urges that the grand list of 1895 was seasonably made, returned and verified by oath. But the listers of 1895 made no appraisal of the real estate. They transferred the appraisal of the plaintiff's real estate from the quadrennial list of the year 1894 to that list. Whether the listers of 1895, because of the invalidity of the quadrennial list of 1894, could have made a valid appraisal of all the real estate of the town, as

is held in *Blodgett* v. *Holbrook,* 39 Vt. 336, we need not inquire. They did not undertake to do so. They mingled the invalid appraisal of the real estate made in 1894 with their valid appraisal of the personal property in 1895, and thereby rendered the grand list of 1895 invalid, and the taxes assessed thereon, under the decisions of this court, wholly invalid. We are aware, as contended by the defendant, that in Massachusetts and some other states, courts of last resort hold that such invalidity, only invalidates such a proportion of the tax assessed and collected as the invalid part of the grand list is of the whole grand list of the person. What might be the decision of the court if the question were now before it for the first time, it is immaterial to inquire. The court has repeatedly held that if a part of the grand list of a person is invalid, or if a part of the tax is assessed for an illegal and unauthorized purpose, such invalidity or illegality renders the whole tax illegal and invalid. Nor does the fact that the illegal portion can be certainly ascertained, as it can be in the case at bar, avail the town, which holds the plaintiff's money, nor the officer when sued for enforcing its collection. This was early held in *Drew* v. *Davis,* 10 Vt. 506. The tax-payer brought trespass against the collector for taking his personal property to satisfy a tax, a definitely ascertained part of which was assessed for an unauthorized purpose. This court held that the damages could not be reduced to the extent of the ascertained proportion of the tax which was assessed for an authorized and lawful purpose. This doctrine has been adhered to by this court whenever the precise question has arisen, so far as we are aware. *Bartlett* v. *Wilson,* 59 Vt. 23; *Foster* v. *Stevens,* 63 Vt. 175.

The court followed these decisions, and committed no error in allowing the plaintiff to recover the full amount of the tax paid by him for town purposes and committed no error against the defendant in excluding offered evidence.

This question was not raised nor considered in *Dean* v. *Aiken and Wife*, 48 Vt. 541, and the language quoted and relied upon by the defendants does not relate to this question.

(2) The plaintiff contends that he is entitled to recover the amount paid by him as town school district tax. This was not in the town treasury when the suit was brought. It is found that the defendant had before paid it to the treasurer of the town school district. In the defendant town, the town school district covers only a portion of the town and had a grand list of only about one-fifth of the grand list of the whole town. We do not think that the town could compel the town school district to return this sum, any more than it could that which it had paid to the state treasurer. The town no more had this sum in its possession nor control than it did the sum which it had assessed, collected from the plaintiff and paid over to the state treasurer. If it has to pay it to the plaintiff, it must collect it from all its tax payers, many of whom can and will receive no benefit from it. Besides, in this form of action, the town is liable only for money belonging to the plaintiff which it holds without right. It does not hold the claimed sum. There was no error in denying his right to recover it.

> *Judgment affirmed. As both parties excepted and neither prevails, neither recovers any costs in this court.*